**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARIANNA GABLE, individually and as Administratrix of the Estate of Robert Clifton Gable,<br><br>        Plaintiff,<br><br>              v.<br><br>INTERNATIONAL TRUCK AND ENGINE CORPORATION,<br><br>        Defendant. | CIVIL ACTION NO. 3:03-CV-1353<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is Motion in Limine of Defendant, International Truck and Engine Corporation, Concerning the Application of Virginia Law.  (Doc. 28.)  I will deny Defendants motion in limine requesting that the laws of the Commonwealth of Virginia be applied to the suit rather than the laws of the Commonwealth of Pennsylvania.  Pennsylvania law will apply to the present suit because a false conflict exists between Pennsylvania and Virginia law, and even if an actual conflict existed, Pennsylvania has more qualitative contacts with the suit.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Pennsylvania choice-of-law analysis involves two parts.  First, the Court must look to see whether a false conflict exists. *Lejeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).  Second, where there is no false conflict, the Court must determine "which state has a greater interest in having its laws applied." *Id.* at 1072.

1

A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991). In addition, where the place of an accident is fortuitous *and* the state where the accident occurred has no interest in the regulatory standard at issue, a false conflict exists between the parties. *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 170 (3d Cir. 1980) (emphasis added). If there is a false conflict, then there is no need to proceed with the second part of analysis and the Court must apply the law of the state whose interest would be harmed if its law were not applied. *See Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 468 (E.D. Pa. 1996). Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. *Lex loci delicti* (the law of the place of the wrong) continues to govern unprovided-for cases. *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005). For reasons discussed below, I find that neither Pennsylvania or Virginia's interest would be harmed by the application of the other's laws and, as such, Pennsylvania law applies through the principle of *lex loci delicti.*

The regulatory standards at issue in this suit stem from four main differences between the laws of Virginia and Pennsylvania. First, Pennsylvania permits recovery on a strict liability theory in products liability cases; Virginia does not. *See, e.g., Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966); *Sensenbrenner v. Rust, Orling & Neale*, 374 S.E.2d 55, 57 n.4 (Va. 1988). Second, contributory negligence as a defense is inapplicable in strict products liability cases in Pennsylvania. *See, e.g., Kimco Dev. v. Michael D's Carpet*, 637 A.2d 603, 607 (Pa. 1993). Under Virginia law, however, contributory

2

negligence is still applied.  *See, e.g., Ford Motor Co. v. Bartholomew*, 297 S.E.2d 675, 680-81 (Va. 1982).  Third, Pennsylvania recognizes a "crashworthiness" theory of liability.  *See, e.g., Stecher v. Ford Motor Co.*, 812 A.2d 553, 554 (Pa. 2002).  Virginia, on the other hand, has not recognized the doctrine.  *See, e.g., Slone v. General Motors Corp.*, 457 S.E.2d 51, 53 (Va. 1995).   Fourth, Pennsylvania does not cap punitive damages, however, Virginia has capped punitive damages at $350,000.00.

Virginia's interest in the regulatory standards at issue would not be impaired by the application of Pennsylvania law.  Virginia is connected to this suit as the place where Mr. Gable and his wife resided at the time of the accident, and as the place where the estate of Mr. Gable is probated.  Virginia's only interest in this case involves its ability to protect its citizens from defective products.  The more restrictive nature of Virginia's law when compared to Pennsylvania's law, most likely reflects Virginia's greater interest in promoting business within the state by providing more protection for manufacturers from suit.  This interest, however, is not at issue in this case because Virginia had no contact with the manufacturer or purchaser of the product.  It is clear that Virginia's interest in protecting its residents from defective products will not be affected by the application of strict liability and uncapped punitive damages under Pennsylvania law.

Like Virginia, Pennsylvania has no interest in the regulatory schemes at issue that would be impaired by the application of Virginia law.  The Court acknowledges that Pennsylvania has a clear interest in protecting its citizens from defective products and encouraging manufacturers to produce safe products.  These interests are reflected in Pennsylvania's law regarding strict products liability.  *See Lejeune*, 85 F.3d at 1071.  The present case, however, does not deal with a product defect alleged to have caused the

3

accident, or to have otherwise created a risk to Pennsylvania's residents and visitors.

This case involves the crashworthiness of the vehicle.  Pennsylvania's only connection to

the vehicle at issue is that a nonresident was allegedly exposed to greater harm in an

accident that fortuitously occurred within Pennsylvania's borders.  Pennsylvania's interest

in encouraging manufacturers to produce safe products is too attenuated in this situation.

The present case is most analogous to the line of cases in which a state was determined

to have no interest in the application of its laws where a defective plane fortuitously

crashed within state boundaries.  *See Read v. Lindsay & Stone*, No. 03-5300, 2004 U.S.

Dist. LEXIS 11813, at *15 (E.D. Pa. 2004) ("By their nature, airplanes travel across state

lines.  While such interstate travel is intended, the crashes, . . . are not.  Hence, the

location of a crash constitutes a fortuitous event that bears no relationship to the state in

which the crash occurred."); *Reyno*, 630 F.2d at 170 (applying Pennsylvania law to an

airplane crash that occurred in Scotland); *see also  Tyson v. The Great Atlantic & Pacific

Tea Co.*, 812 F.Supp. 63, 65 (E.D. Pa. 1993) (analyzing *Griffith v. United Air Lines, Inc.*,

203 A.2d 796 (Pa.1964)) ("In reaching its decision that Pennsylvania law should be

applied to a claim stemming from a plane crash in Colorado, the Griffith Court noted that

Colorado had no policy interest in having its law applied.").  Pennsylvania lacks an

interest in applying its laws on strict product liability to the present situation.

Pennsylvania also lacks an interest in applying its punitive damages jurisprudence

to the present case.  Pennsylvania's uncapped punitive damages serve the dual purpose

of punishing a wrongdoer for misconduct and deterring the wrongdoer and others from

engaging in similar misconduct.  *See, e.g, Kelly*, 933 F. Supp. at 468.  The Court notes

that a lower Pennsylvania court has applied this policy to the application of punitive

damages in a product liability case involving the crashworthiness of a motor vehicle.  That court stated:

> Pennsylvania has a public policy that punitive damages should be awarded against manufacturers of products that are expected to enter Pennsylvania if it is established that the manufacturers know that their products are defective and dangerous . . . .  The policy is most applicable to vehicles, that, if unsafe, are likely to injure residents and visitors to the state who did not select, and are not using the product.  Pennsylvania's public policy is equally furthered by awarding punitive damages to the plaintiff who is a Pennsylvania resident and to the plaintiff who is a resident of another state.  Furthermore, Pennsylvania's public policy would be thwarted by applying the public policy of another state that seeks to encourage manufacturers to leave Pennsylvania as long as Pennsylvania follows its policy of awarding punitive damages.

*Apple v. Ford Motor Co.*, 69 Pa. D. & C.4th 236, 239-40 (Pa. Com. Pl. 2004).  That case is non-binding and distinguishable from the present case.  In *Apple*, the connection between the application of punitive damages and encouraging manufacturers to produce in another state came into focus because the competing forums involved the place where the accident occurred (Pennsylvania) and the place in which the vehicle was leased, titled, and insured (Michigan).  No such relationship is at issue in the present case.  The vehicle in this case was not sold, bought, leased, titled, insured, or manufactured in Virginia.  In the present case, it is unpersuasive that the application of Virginia's punitive damages jurisprudence to one of its residents would impair Pennsylvania's interest.

This is one of the rare unprovided-for cases where no jurisdiction's interests would be impaired if its laws were not applied.  *Lex loci delicti* provides that, as the site of the injury, Pennsylvania law will apply to the suit.  Therefore, the Motion in Limine of

Defendant, International Truck and Engine Corporation, Concerning the Application of

Virginia Law  (Doc. 280 will be denied.

Although I need not reach the second part of the analysis, I highlight that

Pennsylvania has more qualitative contacts than Virginia and, as such, the outcome of

the analysis would not differ if an actual conflict existed.

The second step of Pennsylvania's choice of law analysis has been described as a

"hybrid approach that 'combines the approaches of both Restatement II (contacts

establishing significant relationships) and interest analysis (qualitative appraisal of the

relevant States' policies with respect to the controversy)." *Liebman v. Prudential

Financial, Inc.*, No. 02-2566, 2003 U.S. Dist. LEXIS 21048, *7 (E.D.  Pa. 2003).

Applicable contacts are: (a) the place where the injury occurred; (b) the place where the

conduct causing the injury occurred; (c) the domicile, residence, nationality, place of

incorporation and place of business of the parties; (d) the place where the relationship, if

any, between the parties is centered.  *Kelley v. Ford Motor Co.*, 933 F. Supp. 465, 468

(E.D. Pa. 1996) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 145(2), at 414

(1971)).  The weight of a particular state's contacts must be measured on a qualitative

rather than a quantitative scale.  *Lejeune*, 85 F.3d at 1072.  Furthermore, in an action for

wrongful death or personal injuries, the law of the state where the injury occurred

normally determines the rights and liabilities of the parties.  *Laconis v. Burlington County

Bridge Comm'n*, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990); *see also Apple*, 69 Pa. D. &

C.4th at 243 (relying on RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 175).

Pennsylvania, as the site of the accident, has a greater interest and a more

qualitative contact than Virginia in the present suit.  As I have stated, Virginia's only

contacts with the suit are that at the time of the accident Mr. Gable and his wife resided in

Virginia and Mr. Gable's estate is being probated in Virginia.  These contacts are

relatively unsubstantial.  *See Harsh v. Petroll*, 840 A.2d 404, 419 (Pa. Commw. Ct. 2003)

(In a case concerning a defective automobile where Plainitff and his family members

resided in the state, purchased vehicle in the state, and opened estates in that state,

those contacts were minimal because accident and deaths occurred in another state);

*see also Reed*, 2004 U.S. Dist. LEXIS 11813, at *16 ("New Jersey has only one contact

to the alleged incident.  It is the place of Reed's domicile. This one factor alone cannot

require the application of New Jersey law.").  Pennsylvania has more qualitative contacts

than Virginia in the present suit, and, as such, Pennsylvania law would be applied.


 July 5, 2005                                      /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                         United States District Judge


7

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARIANNA GABLE, individually and as Administratrix of the Estate of Robert Clifton Gable, | NO. 3:03-CV-1353 |
| Plaintiff | |
| v. | (JUDGE CAPUTO) |
| INTERNATIONAL TRUCK AND ENGINE CORPORATION, | |
| Defendant . | |

## ORDER

**NOW**, this  5th  day of July, 2005, **IT IS HEREBY ORDERED** that: Motion in Limine of Defendant, International Truck and Engine Corporation, Concerning the Application of Virginia Law.  (Doc. 28) will be **DENIED.**  The law of the Commonwealth of Pennsylvania will be applied.

 /s/ A. Richard Caputo
 A. Richard Caputo
 United States District Judge